Filed 12/30/25  In re A.A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.A. et al., Persons Coming Under the Juvenile Court Law. | D086583 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ04326A-C) |
| v. | |
| ABEL A., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Michael P. Pulos, Judge.  Affirmed.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

David J. Smith, Acting County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Indra N. Bennett, Deputy County Counsel, for Plaintiff and Respondent.

Abel A. (Father) appeals from the juvenile court's August 14, 2025 dispositional orders involving dependents A.A. (born March 2021) and K.A. (March 2022). At the contested disposition hearing, the court found (1) by clear and convincing evidence the children should be removed from Father's custody under Welfare and Institutions Code section 361(c); (2) his progress "toward alleviating or mitigating the causes necessitating placement has been none"; and ruled (3) he shall have "liberal supervised visit[s]," with the San Diego County Health and Human Services Agency afforded the discretion to expand visitation including to overnights.

Father's sole contention on appeal is that the juvenile court abused its discretion when it refused to order unsupervised, structured visitation. We resolve this appeal by memorandum opinion (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851–854), and affirm.

## I.

### A.

Father and Melissa A. (Mother) have two children, A.A. and K.A. In the year leading up to the Agency's petitions filed under section 300(b)(1), the San Diego Sheriff's Office received 12 service calls involving the family. They included two domestic violence incidents; four family disturbance calls due to arguments between the parents; a welfare check; Father's violation of a temporary restraining order; a burglary report Mother made when Father took her car; and various "unknown trouble report[s] with arguing heard in the background." The children's older dependent half-sibling, G.B., told the Agency he "'lost count'" of the number of times law enforcement had been to the family home, the parents fought "'a lot,'" and when they fought, he and his siblings would remain in their bedroom.

The Agency received six additional referrals with concerns of domestic violence between the parents from 2018 to the filing of the petitions in May 2025; and myriad "community partners," including law enforcement, medical providers, family, and friends, reported the same concerns.

## B.

On April 7, 2025, the Agency received a referral regarding a domestic violence incident between the parents that resulted in paramedics transporting Mother to the emergency room. Late the night before, Mother reported that after she denied Father's sexual advances, he punched her "'more than 10 times'" in the face and head. To escape, Mother jumped out of a second-story window, landing on her back on the concrete patio. She sustained substantial injuries.

With the children inside, Father barricaded himself in the home. Forty-five minutes later, he opened the door and deputies arrested him for domestic violence. The following day, the San Diego Sherrif's Office obtained an emergency protective order against Father, which he immediately violated upon his release from jail.

While at the hospital, Mother reported (1) injuries to her leg and elbow from a domestic violence incident with Father a week earlier; (2) his "long history" of such violence against her; (3) on average they drank "one pint of alcohol . . . about three times a week while the children are in the home" and domestic violence tended to occur after they consumed alcohol; and (4) after she confronted Father about his infidelity, there had been "'ongoing physical'" violence against her.

## C.

At the detention hearing on May 19, 2025, the juvenile court (1) found the Agency made a prima facie showing the children were persons described

in section 300(b)(1); (2) followed the Agency's recommendation to leave the children in Mother's care, conditioned on Father remaining out of the family home; and (3) ordered services for Mother and Father.

## D.

During an Agency interview in preparation for the jurisdiction/disposition hearing, Father (1) reported Mother jumped from the second-floor window during the April 6 incident because she allegedly did not want him to leave the family home after they had argued; (2) acknowledged verbal abuse but denied any physical abuse in their relationship; (3) stated he did not have time to engage in services recommended by the Agency as part of his case plan, including for parenting education and domestic violence; and (4) believed the Agency was "setting him up to fail" by requiring him to engage in such services.

In a followup interview, Father again refused to participate in services offered by the Agency, questioned why he needed them just "to see his kids," and stated his church provided him with the necessary "support and guidance." According to Mother, Father continued to lack "self-awareness" about why the Agency became involved with the family, but she recognized their domestic violence had "direct and indirect impacts to the children." The Agency recommended the children remain in Mother's care, with Father having liberal and supervised visits.

At the contested disposition hearing in August 2025, the juvenile court (1) followed the Agency's recommendations and (2) denied Father's request for "structured[,] unsupervised supervision." Relevant here, the court found Father had made no progress in "alleviating or mitigating the causes necessitating placement." According to the court, Father "is not yet at a stage where he is recognizing the reasons why we are here, the seriousness of

4

the events that brought us here. And although he has mentioned . . . he intends to engage in faith-based assistance to resolve the issues, [the court] also would urge him to engage in whatever case plan services that are available to him." The court thus ordered Father to have "liberal supervised visit[s]," with the Agency afforded the discretion to expand visitation including to overnights.

## II.

Father contends the juvenile court erred when it denied his request for "structured[,] unsupervised supervision" because there purportedly was no evidence of "detriment" to the children's safety. We disagree.

### A.

"One of the dependency court's responsibilities is to define the rights of the parties to visitation by balancing the rights of the parent with the best interests of the child." (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1284.) "Visitation shall be as frequent as possible, consistent with the well-being of the child." (§ 362.1(a)(1)(A).) In balancing these interests, the court in the exercise of its discretion may impose "conditions or requirements" on visitation consistent with the child's best interest. (*In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757.) We review an order setting visitation for abuse of discretion. (*In re R.R.*, at p. 1284.)

### B.

At the contested dispositional hearing, the court found Father had made no progress in "alleviating or mitigating the causes necessitating placement." The evidence supports this finding.

Despite (1) 12 calls involving this family to the San Diego County Sheriff's Office in the year preceding the April 6 incident; (2) the events of that day, when Mother jumped out of a second-story window and landed on

her back on a concrete patio, after Father punched her at least 10 times in the face and head *while the children were at home*; (3) Mother's substantial injuries from that incident and her admission of a long-history of domestic violence in which she was beaten and strangled to the point of unconsciousness; and (4) reports from "community partners" regarding the parents' ongoing domestic violence; Father denied any physical violence ever occurred between him and Mother, and refused to participate in services offered by the Agency in support of his case plan, including parenting education and domestic violence. Instead, he blamed the Agency and Mother for his and the family's predicament.

Given Father's limited insight into what brought the children into dependency and his refusal to engage in services offered by the Agency, we conclude the juvenile court did not abuse its discretion when it ordered Father to have "liberal supervised visitation." (See *In re R.R.*, 187 Cal.App.4th at p. 1284.)

### III.

We affirm the August 14, 2025 disposition orders.

CASTILLO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DO, J.

6